IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No.   21-cr-00188-RBJ

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.    ANTHONY ZAGHAB,

      Defendant.

---

## PLEA AGREEMENT

---

The United States of America (the government), by and through Martha A. Paluch and Rebecca S. Weber, Assistant United States Attorneys for the District of Colorado, and the defendant, ANTHONY ZAGHAB, personally and by counsel, John Richilano, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1. This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

### I.    AGREEMENT

**A. Defendant's Plea of Guilty:**

The defendant agrees

(1)    to waive indictment and plead guilty to an Information charging a violation of Title 18, United States Code, Section 1343, Wire Fraud.

(2)    to waive certain appellate and collateral attack rights, as explained in detail below.

(4)    be liable for restitution in the amount of approximately **$708,141** with the exact amount due determined prior to sentencing which amount is expected to be reduced as explained in the fact section.

Page 1 of 16

COURT
EXHIBIT
1

(5)     to the entry of a final order of forfeiture described fully below.

## B. Government's Obligations:

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(A). The government agrees not to bring other charges against the defendant based on information currently known to the United States Attorney's Office, District of Colorado. Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, file additional charges against the defendant related to his conduct described below.

The government agrees that based upon the evidence in its possession at this time, it does not intend to file criminal charges against the defendant's wife, mother, or sister based on the conduct set forth below.

The government agrees that the defendant should receive a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a). If the defendant does not engage in prohibited conduct or otherwise implicate USSG § 3C1.1, the government agrees to file a motion requesting that the defendant receive a one level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b).

The government agrees to recommend a sentence at the low-end of the applicable guideline range for the criminal history and total offense level calculated by the Court at sentencing. The defendant is free to file a motion for a variance under 18 U.S.C. §3553(a).

**Appellate Waiver**

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement,

Page 2 of 16

the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

(1)   the sentence exceeds the maximum penalty provided in the statute of conviction, 18 U.S.C. § 1343

(2)   the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of **20**; or

(3)   the government appeals the sentence imposed.

If any of these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255. This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

(1)   the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

(2)   the defendant was deprived of the effective assistance of counsel; or

(3)   the defendant was prejudiced by prosecutorial misconduct.

**Forfeiture of Assets**:

The defendant admits the forfeiture allegations. The defendant further agrees to forfeit to the United States immediately and voluntarily  any and all assets and property, or portions thereof, subject to forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), whether in the possession or control of the United States, the defendant, the defendant's nominees, or

elsewhere. The assets to be forfeited specifically include, but are not limited to: 1) $120,070 in fraud proceeds the defendant voluntarily returned to the United States Secret Service (USSS); 2) more than $250,000 in fraud proceeds that were applied to the mortgage for a home held in the defendant's wife's name; and 3) a money judgment in the amount of the proceeds obtained by the defendant's scheme, which will be credited with any net proceeds obtained from judicially forfeited assets. The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action. The defendant understands that pursuant to 18 U.S.C. § 983, the seizing agency is required to send notice in non-judicial civil forfeiture matters. Having been advised of said rights regarding notice, the defendant hereby knowingly and voluntarily waives his/her rights to notice being sent within the time frames in 18 U.S.C. § 983 and to having the property returned to him/her if notice is not sent within the prescribed time frames. The defendant further agrees to the forfeiture of any substitute assets up to the value of any property described above pursuant to 21 U.S.C. § 853(p) and Federal Rules of Criminal Procedure 32.2(e).

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

The United States Attorney's Office for the District of Colorado will recommend to the Attorney General that any net proceeds derived from the sale of judicially forfeited assets  be remitted or restored to eligible victims of the offense, for which the defendant has pleaded guilty, pursuant to 18 U.S.C. § 981(e), 28 C.F.R. pt. 9, and any other applicable laws, if the legal requirements for recommendation are met. The defendant

understands that the United States Attorney's Office only has authority to recommend such relief and that the final decision of whether to grant relief rests solely with the Department of Justice, which will make its decision in accordance with applicable law.

## II.   ELEMENTS OF THE OFFENSE(S)

The parties agree that the elements of wire fraud, in violation of Title 18, United States Code, Section 1343, are as follows:

First: the defendant devised or intended to devise a scheme to defraud or obtain money or property by means of false or fraudulent pretenses, representations or promises,

Second: the defendant acted with specific intent to defraud;

Third: the defendant used interstate or foreign wire communications facilities, or caused another person to use interstate or foreign wire communications facilities for the purpose of carrying out the scheme.

Fourth: the scheme employed false or fraudulent pretenses, representations, or promises that were material.

Tenth Circuit Pattern Jury Instructions (Criminal Cases), 2011, § 2.57 (updated 2018).

## III.   STATUTORY PENALTIES

The maximum penalties for a violation of Count 1 of the Information are: not more than 20 years' imprisonment; maximum term of supervised release of three years; maximum fine of $250,000 or twice the gain or loss from the offense, or both imprisonment and a fine; $100 mandatory victim's fund assessment fee; restitution of an amount to be determined at the time of sentencing.

### IV.   COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

### V.   STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts that may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree the government would be able to prove the following facts at trial:

**Background Related to Pandemic-Related Relief Programs**

The United States Small Business Administration ("SBA") is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. In or around March 2020, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act was enacted to provide emergency financial assistance to the millions of Americans suffering adverse economic effects caused by the COVID-19 pandemic. The CARES Act established several new temporary programs and expanded

existing programs, including programs created or administered by the SBA.

The Economic Injury Disaster Loan ("EIDL") program was an SBA program that

provided low-interest financing to small businesses, renters, and homeowners in

regions affected by declared disasters. The CARES Act authorized the SBA to provide

EIDLs to eligible small businesses experiencing substantial financial disruptions due to

the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue

advances of up to $10,000 to small businesses, known as Economic Injury Disaster

Grants (EIDGs). The amount of the advance was determined by the number of

employees the applicant certified having. The advances did not need to be repaid.

In order to obtain an EIDL and/or EIDG, a qualifying business was required to

submit an application to the SBA and provide information about its operations, such as

the number of employees and the entity's gross business revenues and cost of goods

sold in the twelve months prior to January 31, 2020. The amount of the loan, if

approved, was determined based, in part, on the information provided concerning the

number of employees, gross revenue, and cost of goods. Any funds issued under an

EIDL or EIDG were issued directly by the SBA. EIDL funds were permitted to be used

for payroll expenses, sick leave, production costs, and business obligations, such as

debts, rent, and mortgage payments.

Another source of relief provided by the CARES Act was the authorization of

forgivable loans to small businesses for job retention and certain other expenses,

through a program referred to as the Paycheck Protection Program ("PPP"). In order to

obtain a PPP loan, the authorized representative of a business was required to state the

business's average monthly payroll expenses and number of employees. These figures

were used to calculate the amount of money the small business was eligible to receive under the PPP. A participating lender would then process the PPP loan application. If the PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were fully guaranteed by the SBA.  ZAGHAB'S fraudulent PPP applications were submitted to Lender 1, which participated in the PPP program and was based in New Jersey.

The Colorado Department of Labor & Employment ("CDLE") administered another source of pandemic relief, the Pandemic Unemployment Assistance ("PUA") program. PUA was designed to provide unemployment benefits to workers affected by the pandemic who were not otherwise eligible for regular unemployment benefits. PUA was funded in part by the State of Colorado and in part by the United States government.

**Business Entities**

The defendant owned or controlled corporate entities, all of which had registered business addresses in Colorado. These entities included the following: MKZ Investments Inc, Zippy Document Preparation & Tax, Kloud Heads Smoke Shop & Vape, WSI Marketing & Promotions Inc, and Service Wand Inc. ZAGHAB also claimed to own or control entities bearing his name (Anthony Zaghab) and the names of family members (I.Z., H.Z., R.D., and F.A.).

Beginning on approximately April 29, 2020, and continuing until about February 6, 2021, ZAGHAB knowingly engaged in a scheme to defraud the United States, the State of Colorado, and Lender 1 to obtain pandemic-relief funds to which he was not entitled. He did this by submitting false and fraudulent EIDL and PPP applications to the

SBA and to Lender 1 and was paid approximately $666,630 based on those fraudulent applications. In addition, ZAGHAB claimed and received approximately $41,511 in unemployment insurance benefits on behalf of ineligible family members without their knowledge or consent.

## EIDL Scheme

ZAGHAB submitted numerous fraudulent EIDL applications to the SBA. The SBA funded five of these EIDLs for a total of approximately $517,300, plus an additional $31,000 in EIDGs for these five entities.  The approved EIDL applications included the following:

| Business Name | Applicant Name | Loan Amount | Grant Amount | Claimed Number of Employees | Claimed Gross Revenue | Claimed Cost of Goods Sold |
|---|---|---|---|---|---|---|
| MKZ Investments Inc | Anthony Zaghab | $44,300 | $5,000 | 5 | $100,000 | $1,500 |
| Anthony Zaghab | Anthony Zaghab | $150,000 | $5,000 | 5 | $400,000 | $2,000 |
| Zippy Document Preparation & Tax | Anthony Zaghab | $150,000 | $10,000 | 10 | $1,000,000 | $2,500 |
| Kloud Heads Smoke Shop & Vape | Anthony Zaghab | $150,000 | $10,000 | 10 | $1,000,000 | $2,500 |
| I.Z.[1] | I.Z. | $23,000 | $1,000 | 1 | $50,000 | $2,000 |

ZAGHAB falsely represented that the information provided in the EIDL

---

[1] Initials have been used to denote fictitious business entities bearing the names of ZAGHAB's family members.

applications was true and accurate.  Specifically, as forth in the table above, ZAGHAB falsely stated the number of employees, the purported gross revenues, and the purported cost of goods sold for each of these entities.

As to the specific entities referenced above, ZAGHAB falsely represented that Kloud Heads Smoke Shop & Vape was established in 2019, when in fact ZAGHAB registered it with the Colorado Secretary of State on or about April 29, 2020.  Similarly, ZAGHAB inflated the employees, revenues, and costs for MKZ Investments in the twelve months prior to January 31, 2020, when in fact it was in delinquent status with the Colorado Secretary of State until ZAGHAB cured that status on June 17, 2020, the same day that ZAGHAB submitted the EIDL application.

ZAGHAB also applied for and obtained an EIDL for a fictitious business entity bearing the name of the defendant's deceased father.

ZAGHAB submitted numerous other EIDL applications that were declined or denied by the SBA, but still resulted in ZAGHAB receiving EIDGs ranging from $5,000 to $10,000 each, for a total of $35,000.  These grants included the following:

| Business Name | Applicant Name | Grant Amount | Claimed Number of Employees | Claimed Gross Revenue | Claimed Cost of Goods Sold |
|---|---|---|---|---|---|
| WSI Marketing & Promotions Inc | Anthony Zaghab | $5,000 | 5 | $100,000 | $2,000 |
| Service Wand Inc | Anthony Zaghab | $10,000 | 10 | $400,000 | $2,600 |
| H.Z. | H.Z. | $5,000 | 5 | $400,000 | $1,500 |
| R.D. | R.D. | $10,000 | 10 | $1,000,000 | $1,000 |
| F.A. | F.A. | $5,000 | 5 | $50,000 | $2,000 |

ZAGHAB falsely represented that the information provided in the EIDL applications that resulted in EIDGs was true and accurate.  Specifically, as set forth in

the table above, ZAGHAB falsely stated the number of employees, the purported gross revenues, and the purported cost of goods sold for each of these entities.  ZAGHAB also falsely stated the date each of these businesses was established.

ZAGHAB also applied for and attempted to obtain EIDLs on behalf of fictitious or purported business entities called "R.D.," "H.Z.," and "F.A.," without the knowledge or consent of his family members bearing these names.

In all of the above-described EIDL applications – both the ones that were granted and the ones that were declined but resulted in grants – ZAGHAB falsely represented that the  funds would be used to pay payroll and other permissible expenses when, in fact, ZAGHAB used the majority of these proceeds for his personal benefit.

**PPP Scheme**

ZAGHAB also submitted and caused to be submitted four fraudulent PPP loan applications to Lender 1.  All four PPP loan applications were approved and funded.

Specifically, on June 29, 2020, ZAGHAB submitted a PPP application for a business called "Anthony Zaghab."  He falsely represented that the business had been established in 2019, and that it had a monthly payroll of $8,333.  He received a PPP loan in the amount of $20,833.

On February 6, 2021, ZAGHAB submitted a second PPP application for the purported business entity "Anthony Zaghab."  He again falsely represented that the business had been established in 2019, and that it had a monthly payroll of $8,333.  He received a PPP loan in the amount of $20,832.

On June 29, 2020, ZAGHAB submitted a PPP application for a business called "H.Z."  He falsely represented that the business had been established in 2019, and that

.

it had a monthly payroll of $8,333.  He received a PPP loan in the amount of $20,833.

On February 3, 2021, ZAGHAB submitted a second PPP application for the purported business entity "H.Z."  He again falsely represented that the business had been established in 2019, and that it had a monthly payroll of $8,333.  He received a PPP loan in the amount of $20,832.

ZAGHAB obtained a total of $83,330 in PPP loan proceeds based on these false representations, which he used for his own personal benefit instead of to pay permissible expenses, like payroll.

## Colorado Pandemic Unemployment Assistance Scheme

ZAGHAB also applied for and obtained approximately $41,511 in Colorado PUA for ineligible family members without their knowledge and consent. Specifically, in or around April 2020, ZAGHAB applied for and obtained PUA for his sister and his mother, both of whom resided outside of the United States.  ZAGHAB submitted these applications without the knowledge of his sister or mother and used the money for his own personal benefit. In or around April 2020, ZAGHAB also applied for and obtained PUA for his father who is and was deceased at the time of the application and used the money for his own personal benefit.[2]

## Defendant's Cooperation

Once contacted by law enforcement, the defendant retained counsel.  The defendant and his counsel met with government counsel, during which time the

---

[2] The government agrees that it will not seek to include in the loss calculation or restitution amount the funds the defendant and his wife received in Colorado unemployment benefits during the relevant time period alleged in this Information as they were in fact unemployed when they received those funds.

defendant admitted his conduct as set forth above.  The defendant admitted, as shown by bank records, that he directed more than $250,000 of the fraud proceeds to pay down the mortgage on a home in Centennial, Colorado, held in the name of his wife. He also agreed to return $120,070 of the fraud proceeds to the USSS, and he did so on April 27, 2021.[3]

## Charged Count

As charged in the Information, ZAGHAB agrees that on June 23, 2020, to further the scheme set forth above, he knowingly transmitted and caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, signals, pictures, and sounds, to wit, the submission of an EIDL application for Zippy Document Preparation & Tax from Colorado to an SBA contractor's server located in Iowa.

## VI.    ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is

---

[3] The United States Attorney's Office will recommend to the Attorney General that any net proceeds derived from the sale of judicially forfeited assets be remitted or restored to eligible victims of the offense.

only an estimate. The parties understand that the government also has an independent

obligation to assist the Court in making an accurate determination of the correct

guideline range. To that end, the government may argue that facts identified in the

presentence report, or otherwise identified during the sentencing process, affect the

estimate below.

a) Under Section 2B1.1(a)(1), the base offense level is **7**.

b) The following specific offense characteristics apply: There is a **14-level** increase pursuant to § 2B1.1(b)(1)(H) because the loss was between $550,000 and $1,500,000.[4]

c) A **2-level** enhancement applies pursuant to 2B1.1(b)(11)(C)(i) for the defendant's use of his family members' means of identification to obtain another means of identification, the loan account number, see App. N. 10(C)(ii)(I).

d) There are no victim-related, role-in-offense, obstruction, grouping, or multiple-count adjustments.

e) The adjusted offense level is **23.**

f) The parties agree the defendant should receive a 3-level reduction for acceptance of responsibility pursuant to § 3E1.1(a) and(b). The resulting total offense level is **20.**

g) The parties understand that the defendant's criminal history computation is tentative and based on the defendant's prior convictions. The parties believe the defendant is in criminal history category I.

h) The career offender/criminal livelihood/armed career criminal adjustments do not apply.

i) The advisory guideline range resulting from these calculations is **33-41** months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the

---

[4] The parties agree that the appropriate measure of loss in this case is the amount of loans, grants, and unemployment benefits the defendant received, and not the amount of funds sought in attempted applications that were frequently duplicative of earlier applications and/or ultimately denied.

offense level(s) estimated above could conceivably result in a range from **33** months (bottom of Category I) to **87** months (top of Category VI).  The guideline range would not exceed, in any case, the cumulative statutory maximums applicable to the counts of conviction.

j)      Pursuant to guideline § 5E1.2, assuming the estimated offense level above is correct, the fine range for this offense would be **$15,000 to $150,000**, plus applicable interest and penalties.

k)     Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term is at least one but not more than three years.

l)     The government will seek a restitution order in an amount to be determined prior to sentencing and a final money judgment order for that same amount.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII.    ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement. There are no

other promises, agreements or "side agreements," terms, conditions, understandings, or

assurances, express or implied. In entering this agreement, neither the government nor

the defendant has relied, or is relying, on any other terms, promises, conditions or

assurances.

Date: 08/2/2021

ANTHONY ZAGHAB
Defendant

Date: 8/2/21

JOHN RICHILANO
Attorney for Defendant

Date: 8/9/21

MARTHA A. PALUCH
Assistant U.S. Attorney

Date: 8/9/21

REBECCA S. WEBER
Assistant U.S. Attorney